R.A. PUTNAM & ASSOCIATES, INC., et al., Respondents,

v.

The CITY OF MENDOTA HEIGHTS, DAKOTA COUNTY, Minnesota, Appellant.

No. C2–93–1702.

Court of Appeals of Minnesota.

Jan. 11, 1994.

Review Denied March 15, 1994.

John F. Bannigan, Jr., James J. Hanton, Bannigan & Kelly, P.A., St. Paul, for respondents.

James G. Golembeck, Pierre N. Regnier, Jardine, Logan & O'Brien, St. Paul, for appellant.

Considered and decided by AMUNDSON, P.J., and PARKER and SCHUMACHER, JJ.

## OPINION

SCHUMACHER, Judge.

The district court ordered appellant The City of Mendota Heights, Dakota County, Minnesota (city), to rezone property, grant a conditional use permit, and approve a sketch plan for the site. The city's motion for an amended judgment or a new trial was denied. We reverse.

## FACTS

In approximately 1957, the property in question was zoned low-density residential (R–1). In 1985, the city approved an amendment to its Comprehensive Plan intended to redesignate the property High–Density Residential–Planned Unit Development (HR–PUD). The Metropolitan Council rejected the amendment because of concerns about noise from aircraft using Minneapolis–St. Paul International Airport. In 1987, however, the Metropolitan Council approved a similar amendment that changed the property's Comprehensive Plan designation to HR–PUD. Nevertheless, the property remained zoned R–1.

In 1987 and 1991, commercial development was proposed for the property. The city rejected the proposals. In the meantime, a 1989 study of airport operations indicated significant changes in airport operations had increased both the number of flights over the site and the impact of aircraft noise on the city's residents.

In January 1992, respondent The Rottlund Company agreed to purchase the property from respondent R.A. Putnam & Associates, Inc. Rottlund planned to build 68 townhomes on the property, each of which was expected to sell for $80,000–90,000. The following month, Rottlund asked the city to rezone the property to HR–PUD, grant a conditional use permit, and approve a sketch plan.

On March 24, 1992, the city's planning commission voted 7–0 to recommend that the city council deny Rottlund's requests. The commission forwarded a written recommendation to the council, which conducted hearings on April 7 and April 21, 1992. Minutes were kept of both meetings. Although Rott-

lund made some changes in the project design in response to the city's concerns, the council rejected the request for rezoning by a 3–2 vote on April 21, 1992.

Following the vote, the city attorney prepared a resolution based on his notes, minutes of the planning commission and city council hearings, and the documents that had been filed with the city. The resolution, which was drawn in large part from the planning commission's written recommendation to the council, formalized the city council's findings of fact and denial of the rezoning request. Specifically, the council found:

1. The proposed project does not preserve the natural and scenic qualities of the subject areas.

2. The proposed project does not limit development to a scale appropriate to the existing terrain and surrounding land use.

3. The proposed project does not result in an effective and unified treatment of the development possibilities on the project site.

4. The proposed project does not harmonize with existing and proposed developments in the areas surrounding the site.

5. The proposed project has the potential to depreciate surrounding property values.

6. The proposed project uses private streets of inappropriate widths; the City's policies encourage, wherever possible, dedication of public streets and roadways.

7. The proposed off street parking fails to comply with Section 12.5 Subd. 2 of the Mendota Heights Zoning Ordinances.

8. The Applicant does not now have a final development plan for Outlot A of the proposed project, which is intended for use as a day care center.

9. While the City's Comprehensive Plan was changed in 1985 to designate this property to HR–PUD, a number of substantial changes have taken place in the southeast area of the City since that time which may render such designation inappropriate.

The council adopted the resolution at its next scheduled meeting, on May 5, 1992.

Putnam and Rottlund then brought an action to compel the city to rezone the property, issue a conditional use permit, and approve the sketch plan. The district court limited its review to the record that was before the city council at the time of the council's decision.[1] In June 1993, the court concluded that the city's action was arbitrary and without factual basis and ordered the city to rezone the property HR–PUD, grant a conditional use permit, and approve the sketch plan.

### ISSUES

1. Did the district court err by concluding that the city failed to properly record the basis for its zoning decision?

2. Did the district court err by ordering the city to rezone the property, grant a conditional use permit, and approve the sketch plan?

### ANALYSIS

■ This court independently examines a city's denial of a rezoning request. *St. Croix Dev., Inc. v. City of Apple Valley*, 446 N.W.2d 392, 397 (Minn.App.1989), *pet. for rev. denied* (Minn. Dec. 1, 1989). We do not accord any special deference·to the district court's review of the city's action. *Id.*

■ 1. Rottlund and Putnam contend that the city's failure to make contemporaneous findings created a presumption that the city's actions were arbitrary. If a city council fails to record the basis for a zoning determination at the time it acts, the zoning action is presumed to be arbitrary. *Zylka v. City of Crystal*, 283 Minn. 192, 198, 167 N.W.2d 45, 50 (1969). In this case, the planning commission prepared a written recommendation, the council videotaped its hearings, and the city took minutes of the planning commission and city council hearings and transcribed the council meetings at which reasons for the denial were discussed. This was enough to preclude a presumption

of arbitrariness. *See Swanson v. City of Bloomington*, 421 N.W.2d 307, 312 (Minn. 1988).

■ Even if this record had not been created, the resolution adopted at the May 5 council meeting was an adequate contemporaneous record. The requirement that contemporaneous findings be recorded prevents a city from offering "after-the-fact justifications * * * unrelated to the actual reasons for the initial decision." *Uniprop Manufactured Hous. v. City of Lakeville*, 474 N.W.2d 375, 379 (Minn.App.1991), *pet. for rev. denied* (Minn. Oct. 11, 1991). This rationale is not served by denying a city a reasonable amount of time to prepare a record or formalize its findings. We conclude that as long as the necessary record is prepared within a reasonable time of a zoning decision, a municipality should not be presumed to have acted in an arbitrary manner. *See BBY Investors v. City of Maplewood*, 467 N.W.2d 631, 635 (Minn.App.1991) (findings made contemporaneously where council in process of drafting and adopting them 26 days after hearing and vote), *pet. for rev. denied* (Minn. May 23, 1991).

■ Whether the record has been prepared in a reasonably timely fashion is a question that must be considered in light of the facts surrounding the zoning decision, such as the complexity of the issues involved in reaching that decision. Here, the city was presented with a relatively complex rezoning request and extensive documentation. The council adopted findings two weeks after the hearing, at its next scheduled meeting. Under these facts, we hold that the city's formal findings were prepared and adopted within a reasonable time.

■ 2. We must still determine whether the city's findings and decision were arbitrary. A zoning decision should not be disturbed if a city gives legally sufficient reasons, and the reasons are grounded in fact. *NBZ Enters., Inc. v. City of Shakopee*, 489 N.W.2d 531, 537 (Minn.App.1992), *pet. for rev. denied* (Minn. Sept. 30, 1992). In other

---

1. While the case was pending, the Metropolitan Council approved a city council amendment to the comprehensive plan that redesignated the subject property from HR–PUD to Middle–Density Residential–Planned Unit Development (MR–PUD).

words, a court should not interfere with a municipal zoning decision that has a "rational basis" or is "reasonably debatable." *Swanson,* 421 N.W.2d at 314; *Honn v. City of Coon Rapids,* 313 N.W.2d 409, 417 (1981).

The city council offered several legally sufficient reasons in support of its denial of the zoning request. For example, the council was concerned that Rottlund's project was not appropriately scaled in light of the surrounding land use. This reason finds factual support in the recent single-family construction immediately adjacent to the site and in a report by the city's consulting planners suggesting that the townhomes were larger than other kinds of medium-density housing.

The council was also concerned about the increase in air traffic over the property that had been identified by the 1989 study. While the district court may have disagreed with the conclusions that the council drew from the facts, the conclusions are not irrational. A court may not set aside the judgment of municipal officials merely because the court might have reached another decision if it had been in the council's place. *White Bear Docking & Storage, Inc. v. City of White Bear Lake,* 324 N.W.2d 174, 176 (Minn.1982).

Nor do we agree with the contention by Rottlund and Putnam that the zoning decision was arbitrary simply because it conflicted with the designated use for the property found in the city's comprehensive plan. A municipality should not adopt zoning that conflicts with its comprehensive plan. Minn. Stat. § 473.865, subd. 2 (1990). Furthermore, if a conflict between a zoning ordinance and a comprehensive plan arises because of an amendment to the plan, the ordinance should be amended. Minn.Stat. § 473.865, subd. 3 (1990). Nonetheless, a comprehensive plan's designation of land uses is advisory and does not unalterably bind a city. *Amcon Corp. v. City of Eagan,* 348 N.W.2d 66, 74 (Minn.1984); *see also* Minn.Stat. § 462.357, subd. 2 (1990) (zoning ordinance supersedes comprehensive plan if the two conflict). Nor does a discrepancy between a zoning ordinance and a compre-

hensive plan affect the presumption that a municipal zoning decision is valid. *State by Rochester Ass'n of Neighborhoods v. City of Rochester,* 268 N.W.2d 885, 890 (Minn.1978). Rather, a refusal to zone in accordance with a comprehensive plan is merely evidence that the city's action was arbitrary. *Amcon Corp.,* 348 N.W.2d at 75. In view of the legitimacy of, and the factual support for, the reasons given for the zoning decision in this case, we are not persuaded that the city's denial of Rottlund's rezoning request was irrational or arbitrary.

### DECISION

The city made a record of its findings within a reasonable time of reaching its zoning decision. The district court erred by ordering the city to rezone, issue a conditional use permit, and approve Rottlund's sketch plan.

**Reversed.**